IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOANNE DESUE,

       Plaintiff,                         16cv1646
                                                 ELECTRONICALLY FILED

       v.

AETNA LIFE INSURANCE COMPANY,
THE BANK OF AMERICA CORPORATE
BENEFITS COMMITTEE, THE BANK OF
AMERICA CORPORATION LONG TERM
DISABILITY PLAN,

       Defendants.

## MEMORANDUM OPINION

### I. Introduction

Joanne DeSue ("Plaintiff") brings this action against Aetna Life Insurance Co., the Bank of America ("BOA") Corporate Benefits Committee, and the Bank of America Long Term Disability Plan ("Defendants"), alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Currently pending before this Court is Defendants' Motion to Dismiss Count II of the Amended Complaint, along with a brief in support. Doc. nos. 18-19. Plaintiff filed a Response thereto. Doc. no. 27. Defendant filed a Reply. Doc. no. 28. This matter is ripe for review.

### II. Background

Plaintiff initiated this action on October 31, 2016, by filing a three-count Complaint against Defendants. Doc. no. 1. On January 3, 2017, Defendants filed a Motion to Dismiss Counts II and III. Doc. no. 11. Plaintiff responded by filing a two-count Amended Complaint,

in which she asserts claims for denial of benefits under 29 U.S.C. § 1132(a)(1)(B), and breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). Doc. no. 16.

Plaintiff worked for BOA from October 10, 2011, through August 7, 2013, during which time she was insured "under a group long term disability insurance policy (the 'Group Policy') underwritten and administered by Aetna." *Id.* ¶ 7. The Group Policy provides benefits to any participant who cannot "perform the material duties of [her] own occupation, solely because of: disease or injury" for up to 18 months. *Id.* ¶ 9. After 18 months, the Group Policy provides benefits only if the participant cannot "work at any reasonable occupation." *Id.*

In August 2013, Plaintiff stopped working and was approved for FMLA leave and short term disability benefits, which lasted through February 2, 2014. *Id.* ¶¶ 12-13. She alleges, however, that throughout that period, "Aetna terminated [her] benefits, forcing her to appeal in order to reinstate benefits payments on at least three occasions." *Id.* ¶ 16. "[T]he terminations and delays caused [her] employment with BOA to be terminated and caused a loss of [medical and life] insurance coverage." *Id.*

After her short term disability expired, Plaintiff sought long term benefits under the Plan. *Id.* ¶ 17. Aetna initially denied her claim, but that decision was overturned on appeal on June 24, 2014, so "benefits were paid effective February 6, 2014 and continued through August 5, 2015" – i.e., for the full, 18-month "own occupation" period. *Id.* ¶¶ 21-23. In the meantime, Plaintiff claims that Aetna "stop[ed] and start[ed] her benefits and ma[de] it difficult for her to get needed medical treatment, because she had no income to pay for medical insurance[.]" *Id.* ¶ 40. More specifically, Plaintiff alleges that "Aetna terminated [her] benefit effective January 16, 2015, due to insufficient 'evidence of an impairment severe enough that would prevent [her] from performing the material duties of [her] occupation[,]'" but "[b]enefits were reinstated in

February 2015 'as a courtesy' and then terminated again on February 17, 2015[.]" *Id.* The next month, Plaintiff was advised that "Aetna had placed her file 'on hold' while waiting to obtain medical records, rather than continuing to pay benefits until records were received and reviewed, a delay caused by Aetna's own failure to pay an invoice for the records, and then advised her that she was required to appeal in order to overturn the decision[.]" *Id.* In April 2015, Aetna withheld benefits while it "sent [Plaintiff's] file for a 'full file review' from a clinician, a review which had not been undertaken even though there was evidence in the file of ongoing impairment . . . [B]enefits were reinstated as of February 2015, and authorized through August 2015[.]" *Id.*

In May 2015, Aetna began to consider whether Plaintiff was restricted from working in any occupation and thus entitled to a continuation of benefits. *Id.* ¶ 40. On July 29, 2015, Aetna terminated Plaintiff's benefits after concluding that she could perform full-time sedentary work; her appeal was denied on February 18, 2016. *Id.* ¶ 27. Plaintiff alleges that "Aetna rendered its decision before receiving additional information from [her] which it invited her to submit[.]" *Id.* ¶ 39. "Due to the interruption and loss of her benefits," Plaintiff claims that she was "forced to forego medical insurance, which she could not afford, she lost her life insurance, and she was forced to borrow money, incur interest and draw on her retirement savings to meet her basic living expenses." *Id.* ¶ 58.

As relief, Plaintiff seeks "all benefits due under the Plan from August 2015 to the date of judgment[.]" *Id.* at 15. She also seeks to "[e]njoin Defendants to provide a procedure for full and fair review of adverse determinations under the Plan in accordance with 29 U.S.C. § 1133" and "to discharge their fiduciary duties in accordance with 29 U.S.C. § 1104," as well as "restitution or surcharge to disgorge Defendants' unjust enrichment in wrongfully delaying and

3

denying benefits and/or to make Plaintiff whole for losses, including[,] but not limited to[,] harm suffered for the delay in getting medical treatment, the loss of income and interest incurred on loans to pay for basic living expenses, the loss of retirement savings, loss of life insurance and payment of attorneys' fees caused by Aetna's violation of 29 U.S.C. § 1133 and breach of fiduciary duty[.]" *Id.* at 16.

**III. Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**IV. Discussion**

Defendants' motion raises one issue: whether Plaintiff should be permitted to simultaneously pursue claims under § 1132(a)(1)(B) for denial of benefits and § 1132(a)(3) for breach of fiduciary duty.

Section 1132(a)(1)(B) allows a plan participant to bring an action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1132(a)(3) provides that

> [a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

As the Supreme Court has explained, § 1132(a)(3) operates as "catchall provision" or a "safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). "'[A]ppropriate equitable relief'" means "'those categories of relief' that, traditionally speaking (i.e., prior to the merger of law and equity) 'were typically available in equity.'" *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011) (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006)).

In *Varity Corp.*, the Supreme Court addressed the interplay between § 1132(a)(3) and the other subsections of the statute and emphasized that § 1132(a)(3) only "authorizes '*appropriate*' equitable relief." 516 U.S. at 512. Thus, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would not be 'appropriate.'" *Id.* The *Varity Corp.* plaintiffs, for example, could not proceed under § 1132(a)(1)(B) because they were no longer members of the plan; nor could they proceed under the second subsection of § 1132(b) because that provision "does not provide a remedy for individual beneficiaries." *Id.* Thus, the Supreme Court held that they had to rely on § 1132(a)(3) "or they had no remedy at all." *Id.*

In the wake of *Varity Corp.*, "[t]he Courts of Appeal are split on the issue of whether a plaintiff may proceed with potentially-overlapping claims for both recovery of benefits and breach of fiduciary duty." *Terry v. Northrop Grumman Health Plan*, 989 F. Supp. 2d 401, 407 (M.D. Pa. 2013) (citations omitted). Without any definitive guidance from the United States Court of Appeals for the Third Circuit, district courts in this Circuit have also reached divergent results. *Id.* Some have held that claims under both provisions can proceed simultaneously, at least early in the litigation, "reasoning that 'a plaintiff is only precluded from seeking equitable

5

relief under § 1132(a)(3)(B) when a court determines that plaintiff will certainly receive or actually receives adequate relief for her injuries under § 1132(a)(1)(B) or some other ERISA section.'" *Id.* (quoting *Parente v. Bell Atlantic Pa.*, 2000 WL 419981, at *3 (E.D. Pa. Apr. 18, 2000)); *see also Trechak v. Seton Co. Supplemental Exec. Ret. Plan*, 2010 WL 5071273 (E.D. Pa. Nov. 24 2010); *Tannenbaum v. UNUM Life Ins. Co. of Am.*, 2004 WL 1084658, at *4 (E.D. Pa. Feb. 27, 2004).

>As the *Parente* court explained:
>
>Such a determination cannot be made on a motion to dismiss involving viable claims under both § 1132(a)(1)(B) and (a)(4), because it is not clear at this stage whether § 1132(a)(B)(1) will in fact provide the plaintiff adequate relief. Only when the judicial process establishes extent of the relief provided to plaintiff by § 1132(a)(1)(B) may the Court proceed to the question of whether (and what kind of) equitable relief under § 1132(a)(3) is appropriate. Therefore, a determination of whether § 1132(a)(1)(B) provides plaintiff with adequate relief is premature at this early stage of the proceedings.

2000 WL 419981, at *3. These courts have also looked to Fed. R. Civ. P. 8(e)(2), which "specifically contemplates pleading in the alternative," to support the conclusion that § 1132(a)(3) claims need not be dismissed as redundant or duplicative at the pleading stage. *Id.*; *see also Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 962 (9th Cir. 2016); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014).

However, other district courts within the Third Circuit, "have held that a claim under § 1132(a)(3) is precluded if there is an alternative ground for recovery of disputed benefits." *Id.* (citing *Miller v. Mellon Long Term Disability Plan*, 721 F. Supp. 2d 415, 423–24 (W.D. Pa. 2010); *Cohen v. Prudential Ins. Co.*, 2009 WL 2488911 (E.D. Pa. Aug. 12, 2009)). In *Cohen*, for example, the district court dismissed the plaintiffs' § 1132(a)(3) claim because "the relief sought under each count [was] verbatim the same," and the plaintiffs failed to present "any reasons why § (a)(1)(B) would not, or might not, furnish them an adequate remedy, nor ha[d]

6

they described what additional remedy they might seek under § (a)(3) that cannot be afforded by § (a)(1)(B)." 2009 WL 2488911, at *4.

Plaintiff urges the Court to follow the first line of cases, arguing that she is seeking equitable relief under § 1132(a)(3) that is not available under § 1132(a)(1)(B): "injunctive relief" and "restitution or surcharge to disgorge Defendants' unjust enrichment in wrongfully delaying and denying benefits and/or to make [her] whole for losses, including but not limited to harm suffered for the delay in getting medical treatment, the loss of income and interest incurred on loans to pay for basic living expenses, the loss of retirement savings, loss of life insurance." Thus, she contends that she may pursue the two claims side-by-side.

Defendants rely on the latter line of cases, arguing that Plaintiff suffered only one injury – denial of benefits – for which § 1132(a)(1)(B) provides an adequate remedy.

As a general matter, the Court agrees with Plaintiff that the types of equitable relief she seeks *may* be recovered under § 1132(a)(3). "[A]ffirmative and negative injunctions obviously fall within this category." *Cigna Corp. v. Amara*, 563 U.S. 421, 434 (2011) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). So, too, do restitution, *id.*, and disgorgement, which is a classic form of equitable relief designed "to deprive[] wrongdoers of ill-gotten gains," *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013). Money damages in the form of "surcharge" against a fiduciary may also be appropriate in certain circumstances. *Amara*, 563 U.S. at 442-44. To be sure, Courts have historically held that monetary relief is not available under § 1132(a)(3) because it was thought that money damages are the quintessential form of legal relief. *See, e.g.*, *Bicknell v. Lockheed Martin Grp. Benefits Plan*, 410 F. App'x 570, 576 (3d Cir. 2011); *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 450 (5th Cir. 2013); *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176, 180 (4th Cir. 2012).

However, the Supreme Court's recent decision in *Amara* "broadened the relief available for a breach of fiduciary duty under § 1132(a)(3)." *Horan v. Reliance Standard Life Ins. Co.*, 2014 WL 346615, at *12 (D.N.J. Jan. 30, 2014).

As the *Amara* Court explained:

[T]he fact that [relief under § 1132(a)(3)] takes the form of money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. . . . Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.' . . . The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary. . . . [T]o obtain relief by surcharge . . . a plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation.

*Amara*, 563 U.S. at 442-44 (citations omitted).[1]

Whether any such relief is appropriate in this case is another question. *See N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) (explaining that "the availability of injunctive relief and surcharge does not mean they are necessarily appropriate"). Though styled otherwise, the particular injunctive relief Plaintiff seeks is, for all intents and purposes, a request "to enjoin the plan administrator from improperly refusing to pay benefits in the future," which is available under § 1132(a)(1)(B). *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–147 (1985). So she need not resort to § 1132(a)(3) to obtain it.

---

[1] According to Defendants, the terms "restitution" and "surcharge" are interchangeable, but that is not exactly correct. As the Court of Appeals has recognized, both are forms of "make-whole" relief, *Perelman v. Perelman*, 793 F.3d 368, 373 n.4 (3d Cir. 2015), but "surcharge" is actually a broader term, encompassing any "form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Amara*, 563 U.S. at 442. By contrast, "equitable restitution" typically takes "the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Plaintiff also does not appear to be seeking *equitable* restitution, insofar as she is not looking "to restore . . . particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 715. Nor has Plaintiff explained how Defendants have unlawfully profited from the alleged breach of fiduciary duty, such that they should be required to disgorge any "ill-gotten gains." *Edmonson*, 725 F.3d at 418.

However, Plaintiff has made a request to recover for the "harm suffered for the delay in getting medical treatment, the loss of income and interest incurred on loans to pay for basic living expenses, the loss of retirement savings, loss of life insurance and payment of attorneys' fees." Defendants have not pointed to any authority prohibiting recovery for such losses by way of an equitable surcharge; nor has the Court's own research uncovered any. Absent such authority, and given the scope of the Supreme Court's reasoning in *Amara*, the Court finds that such losses may be compensable under § 1132(a)(3). *See Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp. 3d 1115, 1121 (N.D. Cal. 2014) (allowing § 1132(a)(3) claim to survive pleading stage where plaintiffs sought to recover "consequential financial losses" incurred "as a direct and proximate result of [fiduciary's] breaches"); *Brown v. Hitachi Consulting Health Plan*, 2015 WL 10990263, at *3 (S.D. Cal. Oct. 13, 2015) (same).

Because Plaintiff has identified a form of relief that is available under § 1132(a)(3) but not under § 1132(a)(1)(B), her two claims are not necessarily duplicative.[2] Therefore, the Court will allow the claim for breach of fiduciary duty to proceed, along with the claim for denial of benefits, at least at this juncture. However, "[t]he Court does not reach the particulars of what

---

[2] Because Plaintiff has identified a form of equitable relief that may be recoverable under § 1132(a)(3) but not under § 1132(a)(1)(B), this case is distinguishable from *Potts* and *Boyles*, the primary cases upon which Defendants rely. In those cases, the relief sought in each count was identical and the plaintiffs failed to identify any equitable relief available under § 1132(a)(3) that could not be recovered under § 1132(a)(1)(B). *See Potts v. Hartford Life & Accident Ins. Co.*, 2016 WL 4218384, *4 (W.D. Pa. Aug. 9, 2016); *Boyles v. Am. Heritage Life Ins. Co.*, 2016 WL 4031295, at *10 (W.D. Pa. July 26, 2016).

may and may not be compensated through equitable surcharge, as that inquiry is not properly before the Court at this time." *Zisk*, 73 F. Supp. 3d at 1121.

## V.    Conclusion

Based upon the foregoing, Defendants' Motion to Dismiss is **DENIED**.  A separate Order will follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All ECF counsel of record